UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BVD PETROLEUM US INC., <br> Plaintiff, <br> v. <br> MB XPRESS INC. ET AL, <br> Defendants. | No. 2:19-cv-02137-KJM-KJN <br><br> FINDINGS AND RECOMMENDATIONS <br><br> (ECF No. 10) |

Presently pending before the Court is plaintiff BVD Petroleum US Inc.'s motion for default judgment against defendants MB Xpress Inc. and Jitenderpal Singh Bains.[1] To date, defendants have not opposed BVD's motion or otherwise made an appearance in this action.

The undersigned recommends that BVD's motion for default judgment be GRANTED in part and DENIED in part.

///
///
///
///
///

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations. See 28 U.S.C. § 636(b)(1)(B).

1

## I.     BACKGROUND[2]

BVD provides fuel products and services to trucking companies, including fuel cards for use by truck drivers to purchase fuel and other items at truck stops located throughout the United States and Canada.  (ECF No. 1.)  Defendant MB Xpress Inc. is a trucking company that operates throughout the United States, and defendant Bains is the owner and Chief Executive Officer of MB Xpress Inc.  (Id.)  On July 16, 2019, BVD and MB Xpress executed a contractual agreement titled "Authorization for Pre-Authorized Debit(s) and Cardlock Agreement," for which Bains was a guarantor.  (See ECF No. 1 at 9, 15.)  Contemporaneously, Bains signed a "Personal Guaranty," which stated that Bains "unconditionally guaranteed MB Xpress' obligations under the Authorization Agreement."  (ECF No. 1 at 4.)  Under the Authorization Agreement, BVD issued fuel cards to MB Xpress for use by their truck drivers or agents to purchase fuel and other products at truck stops.  In turn, the truck stops billed BVD for the charges incurred by defendants' truck drivers or agents, and BVD paid those charges directly to the truck stops.  BVD issued weekly invoices to MB Xpress, and the amount of each invoice was debited from the financial account provided by MB Xpress on the invoice due date.

Beginning on September 20, 2019, BVD attempted to debit MB Xpress's account for three separate outstanding invoices pursuant to the Authorization Agreement.  Several days after attempting to debit invoice No. 1071044 for $ 66,989.52, BVD was notified that MB Xpress's account had insufficient funds.  After informing MB Express and Bains of the issue, defendants promised to pay but delayed payment while continuing to charge the fuel cards.  As of this lawsuit, defendants owe $217,102.04 (the principal sum of the three outstanding invoices) plus accruing interest, attorney's fees, and costs (as provided for in the Authorization Agreement).

On October 22, 2019 BVD brought this diversity action against defendants for breach of contract and breach of guaranty.  (ECF No. 1.)  BVD alleges that it has complied with all of its obligations under the Authorization Agreement and Guaranty and that it has been damaged as a result of defendants' failure to pay the three outstanding invoices.

---

[2] All facts derive from BVD's complaint unless otherwise noted.  (See ECF No. 1.)

BVD's complaint and summons were served personally upon Bains—MB Xpress's agent for service—on October 25, 2019, at defendants' address of record. (ECF Nos. 5, 6.) Defendants failed to answer or otherwise respond, and the Clerk of the Court entered default on November 21, 2019. (ECF Nos. 7, 8, 9.) On December 20, 2019, BVD moved for a default judgment and served defendants via mail. (See ECF No. 10.) Defendants failed to respond to BVD's motion. Out of an abundance of caution, the Court vacated the January 23, 2020 hearing, and provided defendants additional time to oppose. (ECF No. 11.) BVD served a copy of this order on defendants via mail on January 16, 2020. (ECF No. 13.) On February 14, 2020, BVD filed a notice with the Court of no receipt of opposition to BVD's Motion for Default Judgment. (ECF No. 14.)

BVD seeks judgment in the amount of $239,864.92 be entered against defendants. (ECF No. 10 at 2.)

**II.    LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

1. the possibility of prejudice to the plaintiff,
2. the merits of plaintiff's substantive claim and the sufficiency of the complaint;
3. the sum of money at stake in the action;
4. the possibility of a dispute concerning material facts;
5. whether the default was due to excusable neglect, and
6. the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

///

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, but it does not establish the amount of damages. Geddes, 559 F.2d at 560.

### III. DISCUSSION

#### A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

The undersigned finds that the weight of the Eitel factors entitles BVD to a default judgment against defendants MB Xpress and Bains on both of BVD's claims, and recommends default judgment be entered with respect to liability.

##### 1. BVD is prejudiced by defendants' non-responsiveness.

The first Eitel factor considers whether BVD would suffer prejudice if default judgment is not entered, as prejudice to a plaintiff weighs in favor of a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, because BVD has unsuccessfully attempted to recover on defendants' defaults and defendants have been silent in this matter, BVD would be left without any other recourse against defendants. Accordingly, the first Eitel factors favors the entry of default judgment.

##### 2. BVD's two claims are meritorious and sufficiently pleaded.

The second and third factors (the merits of the substantive claims and the sufficiency of the complaint) are considered in tandem, due to the relatedness of the two inquiries. The court

must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

Here, BVD seeks recovery under two causes of action: breach of contract and breach of guaranty. The Authorization Agreement and Guaranty provide that they shall be construed according to Delaware law. (See ECF No. 1 at 7, 9.) Accordingly, the Court will assess each claim pursuant to Delaware state law.

### a. Breach of Contract

Under Delaware law, the elements of a breach of contract claim are: "(1) the existence of a contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff." Avaya Inc., RP v. Telecom Labs, Inc., 838 F.3d 354, 389 (3rd Cir. 2016) (citation omitted).

In its complaint, BVD alleges that on July 16, 2019, BVD and MB Xpress entered into the Authorization Agreement (a signed copy is appended to the complaint), which set forth the parties' relevant information and the nature of the agreement in significant detail. (See ECF No. 1 at 9-13.) Under the Authorization Agreement, BVD would issue fuel cards to defendant MB Xpress for use by MB Xpress's drivers or agents at truck stops, and would pay the charges incurred by MB Xpress's drivers or agents directly to the truck stops. BVD would then debit the amounts accrued from MB Xpress's checking account. In the months following, MB Express's drivers incurred charges, and BVD paid the invoices (copies of three outstanding invoices are attached to the complaint, which outline incurred by each driver, including their name and assigned vehicle number, and the location, date, and time of each transaction). (See id. at 18.) BVD attempted to contact defendants for payment, to no avail. (See id. at 4-5.) These facts constitute a breach of the Authorization Agreement. As a result, BVD has suffered monetary damages in the amount of the outstanding invoices. BVD also seeks interest, attorneys' fees, and costs, as provided for in the Authorization Agreement upon MB Xpress's default of payment. (Id. at 5-7.)

Taking these well-pled allegations as true, the undersigned finds that BVD has adequately pled a breach of contract claim under Delaware law. See Fair Housing of Marin, 285 F.3d at 906.

*b. Breach of Guaranty*

Under Delaware law, "a contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance." Falco v. Alpha Affiliates, Inc., 1997 U.S. Dist. LEXIS 20122, at *15 (D. Del. Dec. 10, 1997) ("[I]n order for a guaranty to be enforceable it must, with reasonable clearness, evidence an intent on the part of a party to become liable on an obligation in the event of default by the primary obligor.") (citations and internal quotes omitted).

On July 16, 2019, BVD and Bains executed the Guaranty. (See ECF No. 1 at 6, 15.) The Guaranty provides that any default by MB Xpress under the Authorization Agreement shall be a default by Bains. The signed guaranty appended to BVD's complaint clearly provides that Bains agreed to pay the debt of MB Xpress in case of MB Xpress's default under the Authorization Agreement. (See ECF No. 1 at 15.) Accordingly, MB Xpress's breach of contract under the Authorization Agreement, as discussed above, constitutes a breach of guaranty by Bains. Thus, BVD adequately pled a breach of guaranty claim. See Fair Housing of Marin, 285 F.3d at 906.

3. <u>The amount of damages is proportional to plaintiff's harm.</u>

Next, the court considers "the amount of money at stake in relation to the seriousness of [d]efendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

While the $239,864.92 in damages sought by BVD in its motion for default judgment is a substantial sum of money, it is the same as the amount of loss and costs incurred by BVD. In addition to BVD's request for the principal amount of $217,102.04 owed under the three outstanding invoices, BVD seeks $5,145.37 in accrued pre-judgment interest, $16,990.00 in attorneys' fees, and $627.48 in costs, all of which are provided for under the Authorization Agreement. (See ECF No. 10-1 at 8.) Therefore, the requested award for damages is reasonable and proportional given the well-pled allegations.[3] See Coach Servs. v. YNM, Inc., 2011 U.S.

---

[3] Despite the Court's finding here, the undersigned has identified a slight defect in the calculation of pre-judgment interest, as discussed in Section B below. This defect does not affect the Court's finding that the sum is proportional to the allegations.

Dist. LEXIS 52482, at *8-9 (C.D. Cal. May 6, 2011) ("The amount of money sought by plaintiff is consistent with the allegations in the [c]omplaint and the claim asserted."). Accordingly, this factor weighs in favor of entry of default judgment.

   4. The material facts are not in dispute.

The facts of this case are relatively straightforward, and BVD has provided the Court with well-pleaded allegations and documentation supporting its claims. Specifically, BVD has provided signed copies of the relevant agreements, as well as copies of the outstanding invoices and other signed affidavits, further attesting to BVD's claims set forth in its complaint. (See ECF Nos. 1, 10.) The Court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, and thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. The undersigned finds that this factor favors the entry of a default judgment.

   5. The court sees no excusable neglect.

Upon review of the record before the Court, the undersigned finds that the default was not the result of excusable neglect. See Pepsi Co, Inc., 238 F. Supp. 2d at 1177.

Defendants have had ample notice in this lawsuit. As an initial matter, BVD attempted to contact defendants before bringing this suit in order to recoup payment for the outstanding invoices. (ECF No. 1 at 4.) BVD then served its complaint upon defendants personally at BVD's address of record. (See ECF Nos. 1 at 9; 5; 6.) BVD also served defendants, by mail, its motion for default judgment and the court's order providing an additional opportunity to respond to the default. (ECF No. 3, 11). Defendants have not filed anything in response to BVD's filings or otherwise made an appearance in this case. Accordingly, there is no indication that defendants' default resulted from excusable neglect and this factor favors the entry of a default judgment.

///

///

6. The policy favoring disposition on the merits is outweighed by other factors.

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

Here, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

**B. Terms of the Judgment to be Entered**

Pursuant to the above analysis, the Eitel factors weigh in favor of entering default on liability against both defendants. Further, the principal amount of damages corresponds to the invoices submitted, and so $217,102.04 appears an appropriate amount of damages. Further, $627.48 in costs is appropriate. However, the undersigned finds two issues with BVD's request for damages: (1) its calculation of pre-judgment interest; and (2) the prevailing rate of certain attorneys' fees. Thus, the undersigned recommends that BVD's request for damages be denied without prejudice.

1. Pre-judgment Interest

Pre-judgment interest is a substantive part of a plaintiff's claim, and state law generally governs the award of pre-judgment interest in diversity actions. Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co., 513 F.3d 949, 961 (9th Cir. 2008). "When a contract includes a valid choice of law provision, the court applies the law of the chosen state to find the appropriate prejudgment interest." Phillips 66 Co. v. Petros Rai Stations, LLC, 2016 U.S. Dist. LEXIS 56325, at *21-23 (E.D. Cal. April 26, 2016); see also In re FKF 3, LLC, 2018 U.S. Dist. LEXIS 183087, at *40-41 (S.D.N.Y Oct. 24, 2018) ("When determining the applicable prejudgment interest rate, courts look to the *source of the law underlying a party's claim* . . . 'where prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate.'") (emphasis added).

1    Here, the Authorization Agreement provides that "any default in payment shall incur an
2    interest charge at a rate equal to the lesser of (a) 24% per annum, and (b) the highest rate
3    permitted by law." (ECF No. 1 at 13.)  Under this provision, BVD seeks pre-judgment interest
4    beginning on the date of the alleged defaults at the rate of 10% per annum--pursuant to Cal.
5    Const., art. XV, § 1.  (ECF No. 10 at 5.)  However, the Authorization Agreement states that
6    Delaware law governs this dispute.  (See ECF No. 1 at 12.)  Delaware Law provides that the
7    maximum interest rate must not exceed the Federal Reserve discount rate by more than 5%.  See
8    Del. Code Ann. tit. 6, § 2301 (2020).

9    Thus, in order to award pre-judgment interest, BVD must proffer an argument calculating
10   the amount under Delaware law, or in the alternative, clarify the Authorization Agreement's
11   choice of law provision and provide further justification as to which state's law governs its
12   substantive claims and the pre-judgment interest.  <u>BVD may argue its position in its objections to
13   these findings and recommendations, due within 14 days of these findings and recommendations</u>.

14   2. <u>Attorneys' Fees</u>

15    "A federal court sitting in diversity applies the law of the forum state regarding an award
16   of attorneys' fees."  <u>Kona Enters., Inc. v. Estate of Bishop</u>, 229 F.3d 877, 883 (9th Cir. 2000).
17   Under California law, reasonable attorneys' fees and costs are available to the prevailing party in
18   a contract action if the contract specifically provides for such an award. Cal. Civ. Code § 1717
19   (2020). An award for attorneys' fees is calculated using the "lodestar method," whereby the
20   number of hours reasonably expended on litigation is multiplied by a reasonable hourly rate. See
21   <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  Hours that are "excessive, redundant, or
22   otherwise unnecessary" should be excluded.  See <u>id.</u> at 434.  In determining the reasonable hourly
23   rate, the district court should generally consider the prevailing market rates for attorneys of
24   comparable skill, experience and reputation within the community in which the district court sits.
25   See <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205, 1210-11 (9th Cir. 1986); <u>Camacho v.
26   Bridgeport Fin. Inc.</u>, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted).  The party seeking the
27   award for attorneys' fees bears the burden to show that the amount it seeks is reasonable.  See
28   <u>Phillips 66 Co. v. Cal. Pride Inc.</u>, 2017 U.S. Dist. LEXIS 104555, at *38 (E.D. Cal. July 5, 2017).

Here, BVD is entitled to reasonable attorneys' fees and costs under the Authorization Agreement, which provides that "[i]n the event of non-payment and collection or court proceedings are required; the undersigned agree that they will pay for all costs and expenses incurred in collecting any and all unpaid indebtedness including all legal and collection fees . . . ." (ECF No. 1 at 13.)  BVD's requests attorneys' fees for three attorneys at hourly rates of $535, $395, and $315, all of whom work for Sherman Oaks, California based law firm Levinson, Arshonsky & Kurtz, LLP.  (See ECF No. 10-2.)

As an initial matter, BVD's lead counsel Anne C. Manalili failed to explain in her declaration (ECF No. 10-2) whether BVD sought local counsel in this matter and why Manalili's firm, as opposed to a firm in Sacramento, was necessary.  See Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992) (finding that non-forum rates may be used "if local counsel [is] unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case") (citations omitted).  More importantly, Manalili failed to explain the qualifications of her firm and the other assigned attorneys, as well as how the requested hourly rates are compatible with the prevailing rates for contract-dispute litigation in the Eastern District of California.  See Suretec Ins. v. BRC Constr., Inc., 2013 U.S. Dist. LEXIS 124792, at *2-3 (E.D. Cal. Aug. 30, 2013).  A recent comprehensive analysis of attorneys' fees in the Eastern District of California found the following hourly rates to be reasonable: $450 for partners with at least 20 years of experience; $400 for partners with between 10 and 20 years of experience; and $250 for associates with between four and 10 years of experience.  See Firstsource Solutions, USA, LLC v. Tulare Regional Medical Center, 2019 U.S. Dist. LEXIS 109895, at *8 (E.D. Cal. June 28, 2019).

Thus, the rates of partner Steve Kurtz and associate Sonia Roham appear to be too high for the Eastern District of California.  For this reason, the undersigned is inclined to award $16,646, accounting for a rate of $450 for Mr. Kurtz and $250 for Ms. Roham.  However, because BVD may wish to respond to the pre-judgment interest issue (see section B.1. above), the Court will refrain from recommending these amounts at this time.  <u>BVD may respond to the Court's findings in their objections to these findings and recommendations, due within 14 days</u>.

## IV. <u>CONCLUSION</u>

Based on the reasons stated herein, the undersigned recommends that BVD be granted default judgment against defendants jointly and severally with respect to liability for breach of contract and breach of guaranty. However, the undersigned recommends that BVD's request for damages be denied without prejudice at this time. Should BVD wish to proffer its arguments on the pre-judgment interest and attorney's fees issues, it may do so in its objections to these findings and recommendations.[4]

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiff's Motion for Default Judgment (ECF No. 10) be GRANTED with respect to liability against all defendants; and

2. Plaintiff's Motion for Default Judgment be DENIED without prejudice with respect to damages.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: March 20, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

BVD.2137

---

[4] Should BVD fail to respond to these issues in its objections, it will be required to file and serve a separate motion for default on the damages issue. Thus, the undersigned highly recommends BVD respond to these issues in its written objections to these findings and recommendations (which may result in amended finds and recommendations – thus obviating the need for additional separate filings).